IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| NTE AVIATION, LTD., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| | § | Case No. 4:06-CV-173 |
| | § | |
| LIAT (1974) LTD., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION & ORDER
## GRANTING DEFENDANT'S MOTION TO DISMISS

Before the court are "Defendant's Motion to Dismiss for Lack of Subject-Matter Jurisdiction, Motion to Dismiss for Lack of Personal Jurisdiction, and Original Answer Subject Thereto" (the "Motion") (docket entries #7 & 8), "Plaintiff's Response to Defendant's Motion to Dismiss for Lack of Subject-Matter Jurisdiction and Motion to Dismiss for Lack of Personal Jurisdiction" (the "Response") (docket entry #11), and "Defendant's Reply to Plaintiff's Response to Defendant's Motion to Dismiss for Lack of Subject-Matter Jurisdiction, Motion to Dismiss for Lack of Personal Jurisdiction, and Original Answer Subject Thereto" (the "Reply") (docket entry #15). Upon consideration of the Motion, the Response, and the Reply, the court is of the opinion that the motion should be granted.

## I. BACKGROUND

This case involves an alleged breach of contract arising out of a lease agreement between Plaintiff NTE Aviation, Ltd. ("NTE") and Defendant LIAT (1974) Ltd. ("LIAT"). LIAT is an Antigua, West Indies corporation with its principal place of business in Antigua, West Indies.

Motion, ¶ 3.  Several foreign governments own a little over 80 percent of LIAT.  Motion, Ex. B.  On

September 27, 2004, LIAT and NTE entered into an engine lease agreement (the "Lease"), which

provided that NTE, as lessor, would lease to LIAT, as lessee, a jet engine.  Response, p. 1.  LIAT

took possession of the engine and made monthly payments of $35,000, as required under the Lease,

through and including October, 2005.  *Id.*  The lease payments were made to NTE at its office in

Lewisville, Denton County, Texas.  *Id.*  At some unknown time, LIAT delivered the leased jet engine

to Pratt & Whitney Corporation for maintenance.  *Id.*  Pratt & Whitney Corporation held the engine

until March 31, 2006, at which point it shipped the engine back to NTE.  *Id.*  The engine was

delivered to NTE on April 4, 2006.  *Id.*

LIAT did not make any lease payments to NTE for the months of November and December,

2005, and January and February, 2006.  *Id.* at p. 2.  The payments for those months would have

totaled $140,000.  NTE brought a breach of contract suit against LIAT for these damages.  *Id.* at 2.

Because LIAT has never maintained a regular place of business or designated an agent for service

of process in the state of Texas, NTE served LIAT via the Secretary of State of Texas.  Complaint,

¶ 2.  LIAT received notice of the suit and thereafter filed this motion to dismiss.  LIAT argues that

the court should dismiss NTE's breach of contract claim because the court lacks both subject-matter

jurisdiction and personal jurisdiction over LIAT.

## II.  **LEGAL STANDARD AND DISCUSSION**

LIAT argues that the court does not have subject matter jurisdiction over it because under

the United States Foreign Sovereign Immunities Act ("FSIA"), LIAT qualifies as an instrumentality

of a foreign state, which makes it immune from lawsuits in United States courts.  Motion, ¶ 6. LIAT

also argues that even if the court has subject-matter jurisdiction, the court does not have personal

jurisdiction.  The court will begin by addressing the personal jurisdiction argument.

A.      Personal Jurisdiction under the Foreign Sovereign Immunities Act Legal Standard

LIAT argues that it does not have sufficient contacts with Texas to justify the court's exercise of personal jurisdiction, and further, that the exercise of jurisdiction would offend traditional notions of fair play and substantial justice.  Under the FSIA, where subject-matter jurisdiction exists and where service of process is made pursuant to 28 U.S.C. section 1608, then personal jurisdiction exists as long as the exercise of personal jurisdiction complies with the due process clause.  *Callejo v. Bancomer, S.A.*, 764 F.2d 1101, 1107 n.5 (5th Cir. 1985).  Thus, to determine whether this court has personal jurisdiction, the court must determine if subject matter jurisdiction exists, if service of process was made pursuant to 28 U.S.C. section 1608(b)[1] and if the exercise of jurisdiction under the circumstances would comply with the due process clause.  The court will first address whether exercising jurisdiction under the circumstances of this lawsuit complies with the due process clause, and finding that it does not, will not reach the questions of whether service of process was proper or subject-matter jurisdiction exists.

The Fifth Circuit has outlined two requirements to satisfy jurisdictional due process: (1) the nonresident defendants must have some minimum contacts with the forum, which resulted from an affirmative act or acts on their part ("minimum contacts"); and (2) maintenance of the suit must not offend the traditional notions of fair play and substantial justice.  *D.J. Invs., Inc. v. Metzeler Motorcycle Tire Agent Gregg, Inc.*, 754 F.2d 542, 545 (5th Cir. 1985). When determining whether the minimum contacts requirement has been met, the number of contacts between the nonresident

---

[1] The proper service of process statute is 28 U.S.C. section 1608(b) because the defendant in the instant case is not a foreign government but rather, if anything, an instrumentality or agent of a foreign government.  28 U.S.C. § 1608.

defendants and the forum state are not alone determinative. *Id.* at 547. Rather, the more important issue is whether the defendants engaged in any "activity, including activity 'outside the state that has reasonably foreseeable consequences in the state,' by which they purposefully availed themselves of the benefits and protections of the forum state's laws." *Id.* (quoting *Prejean v. Sonatrach, Inc.*, 652 F.2d 1260, 1268 (5th Cir. 1981)).

B.    Discussion and Analysis

LIAT argues that the court does not have personal jurisdiction over it because it does not have sufficient contacts with Texas. In support of this argument, LIAT points to the following: it is incorporated under the laws of Antigua, West Indies; its principal place of business is in Antigua, West Indies; it does not have an agent for service of process in Texas; it has not committed any torts in Texas; the engine that was the subject of the Lease was delivered to LIAT in Antigua; and no LIAT employee traveled to Texas for any reason related to the contract made the basis of the instant case. In response, NTE argues that the minimum contacts requirement was met because LIAT made all lease payments to NTE at its Lewisville, Texas office and because LIAT and NTE exchanged phone calls and correspondence (via facsimile) throughout the Lease negotiation period. The court disagrees. The Fifth Circuit has explicitly stated that the requirements of due process must be complied with in order for personal jurisdiction under FSIA to exist. *See Callejo*, 764 F.2d at 1107 n.5. As such, the court reviewed Fifth Circuit precedent and finds that the contacts LIAT had with Texas are not sufficient to satisfy the minimum contacts requirement of the due process clause.

The circumstances in most cases where the Fifth Circuit has found it proper to exercise personal jurisdiction are different from the circumstances found in the instant case. For example, in *Electrosource, Inc. v. Horizon Battery Technologies, Ltd.*, 176 F.3d 867 (5th Cir. 1999),

-4-

Electrosource, a Texas corporation, negotiated via letter with Horizon Battery Technologies ("HBT"), an Indian corporation, to create a licensing agreement between the parties. *Electrosource, Inc.*, 176 F.3d at 872.  Unlike the events in the instant case, however, HBT sent six representatives to Texas to negotiate the agreement, signed the agreement in Texas, and initiated multiple contacts between the parties. *Id.*  Additionally, the agreement in *Electrosource* contemplated future Texas presence by HBT because it called for HBT employees to be trained and educated in Texas. *Id.*

Another example is *Southwest Offset, Inc. v. Hudco Publishing Co.*, 622 F.2d 149 (5th Cir. 1980), in which Southwest, a Texas corporation, and Hudco, an Alabama corporation, entered into approximately eight contracts either in writing or over the phone. *Southwest*, 622 F.2d at 150.  In addition to the correspondence, partial performance of the contract occurred in Texas in that the product was sent to Texas for initial review and again, later, for corrections. *Id.*  In other cases where the Fifth Circuit found it appropriate to exercise personal jurisdiction, the defendants were accused of committing a tort in the forum state and also had greater connections to the state. *See, e.g., D.J. Invs.*, 754 F.2d at 547 (finding additional support for personal jurisdiction under the following circumstances: the defendant traveled to Texas to discuss the negotiations, several phone calls between the parties occurred, the contract called for partial performance in Texas, and there was no choice of law provision against Texas); *Miss. Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1105-06, 1009 (5th Cir. 1982) (noting that the defendant was no "mere passive customer" and also finding additional support for personal jurisdiction under the following circumstances: the nonresident defendant contracted with the plaintiff knowing a majority of the contractual acts would be carried out in the forum state, and the defendant placed orders with the plaintiff nineteen different times over a two month period).

In contrast, in those cases where the Fifth Circuit found personal jurisdiction did not exist, the facts are more analogous to the circumstances in the instant case.  In many of these cases, the defendants did not have an office, place of business or agent for service of process in the forum state. *See, e.g., Hydrokinetics, Inc. v. Alaska Mech., Inc.*, 700 F.2d 1026, 1029 (5th Cir. 1983); *Benjamin v. W. Boat Building Corp.*, 472 F.2d 723, 729 (5th Cir. 1973); *Charia v. Cigarette Racing Team, Inc.*, 583 F.2d 184, 187 (5th Cir. 1978).  In *Hydrokinetics*, like in the instant case, the defendant's sole contact with Texas was the single contract made between the parties.  *Hydrokinetics, Inc.*, 700 F.2d at 1029.  While the defendant in that case mailed payments to Texas and one of the defendant's officers traveled to Texas twice, the court found that these contacts were not sufficient to overcome an Alaska choice-of-law provision in the contract.  *Id.*  A choice-of-law provision was not at issue in *Benjamin* and *Charia*, however, and the court still found the contacts, similar to the instant case, insufficient.  In *Charia*, the defendant's sole contact with the state was the one contract made with the plaintiff.  *Charia*, 583 F.2d at 187.  Additionally, just as in the instant case, there were telephone calls and mailings between the parties and there was more contact including the fact that the finished product was delivered to the forum state and the defendant had other customers in the forum state. *Id.*  In *Benjamin*, as in the instant case, the defendant and plaintiff communicated about the contract, but the defendant never sent a representative to the forum state and had no other customers in the forum state.  *Benjamin*, 472 F.2d at 729.[2]

---

[2]

The court recognizes that the facts in *Charia* and *Benjamin* are somewhat distinct in that the defendants were the providers of the product, rather than the recipients, and some Fifth Circuit case law has noted that such a distinction may be important.  *See, e.g., Miss. Interstate Express*, 681 F.2d at 1007 ("When a nonresident defendant 'takes purposeful and affirmative action,' the effect of which is 'to cause business activity, foreseeable by [the defendant], in the forum state,'" such action by the defendant is considered a minimum contact).  The Fifth Circuit has distinguished such a rule, however, by demonstrating that important to the *Mississippi Interstate* holding, and other cases finding personal jurisdiction, was the fact that *Mississippi Interstate* involved more than merely making telephone calls to and

The facts in the instant case are more analogous to the facts in those cases where the Fifth Circuit has found that personal jurisdiction did not exist.  The only facts supporting personal jurisdiction here are the fact that LIAT sent lease payments to NTE at its Lewisville office and the fact that LIAT and NTE exchanged telephone calls and other communications.  Similar activities occurred in *Hydrokinetics*, *Charia*, and *Benjamin*, and the Fifth Circuit found no personal jurisdiction.  In the instant case, there was only one lease, not several, the plaintiff did not partially perform the Lease in Texas, it merely sent the engine from Texas, there was no future contact with Texas contemplated under the Lease, and finally, no representatives from LIAT ever traveled to Texas.  In the cases where the Fifth Circuit found personal jurisdiction existed, one, or several, of these circumstances existed.  The court acknowledges that personal jurisdiction is determined on a case-by-case basis and finds that the circumstances in this case do not warrant personal jurisdiction. *See Southwest Offest, Inc.*, 622 F.2d at 151.  As such, the court hereby **GRANTS** the defendant's motion to dismiss for lack of personal jurisdiction.

## III.   CONCLUSION

Having considered the Motion, the response, and the Reply, the court hereby **GRANTS** Defendant's Motion to Dismiss (docket entries  #7 & 8) as the court has found it does not have personal jurisdiction under the circumstances.  Because the court has found it does not have personal

---

accepting payment in the forum state.  Rather, in those cases, the contract was at least partially performed in the forum state, and in *Mississippi Interstate*, the court went so far as to note "Mississippi was clearly the hub of the parties' activities." *See, e.g., Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1147 (5th Cir. 1985).  Additionally, courts have placed emphasis on the facts that in *Mississippi Interstate*, the defendant was no "mere passive customer" but rather exercised a great deal of control over the transaction and also that the relationship was "sustained" over a period of time, with many orders being placed.  NTE has offered this court no indication that LIAT was exercising control during the Lease period, or that the two parties were even involved any sort of communication during the time LIAT was making payments to NTE. *See, e.g., Newton Assoc., L.L.C. v. Miller Desk, Inc.*, 2003 WL 21283948, *3-4 (E.D. La. June 3, 2003).  As such, while the court had to consider the fact that the nonresident defendant was on the receiving end of this agreement, it does not find such information changes its minimum contacts analysis.

jurisdiction, it will not address the subject-matter jurisdiction argument.  In accordance with the court's ruling, NTE's claims are dismissed without prejudice.

**SIGNED this the 27th day of March, 2007.**

_Richard A. Schell_

RICHARD A. SCHELL
UNITED STATES DISTRICT JUDGE